· H. E. SMITH, Ex'r, v. M. H. OWEN et al.

ACTION. *Right of. Attorney.* The right of action against an attorney for the value of funds paid to him in satisfaction of a judgment which he had no authority to receive, arises as soon as the payment is made.

FROM SHELBY.

Appeal from the Chancery Court at Memphis.  R. J. MORGAN, Ch.

HARRIS & TURLEY for complainant.

HUMES & POSTON for defendants.

COOPER, J., delivered the opinion of the court.

In this suit for the administration of the estate of John A. Noce, deceased, as an insolvent estate, the chancellor held that the claim of E. Bouldin and others, who were non-residents of the State, was barred by the statute of three years' limitation, and the claimants appealed.

John A. Noee died in December, 1865. His widow, Harriet E., qualified as executrix of his will on the 6th of January, 1866, and afterwards intermarried with Henry G. Smith. On the 28th of March, 1868, M. H. Owen, for himself and other creditors, filed a bill against the executrix, who was also sole devisee under Noee's will, to have land sold for the

payment of the debts of the estate. On February 28, 1871, Henry G. Smith and Harriet E., his wife, filed a bill, in her right as executrix, against the creditors to administer the estate as insolvent. The petition of E. Bouldin and others was filed in this cause on the 27th of March, 1872, and would be *prima facie* barred by the statute of limitations of three years: Code, sec. 2784.

The claim set up in the petition has a somewhat lengthy history. On December 11, 1854, Felix G. Norman and R. S. Cook, administrators in the State of Mississippi of Henry Cook, deceased, sold and conveyed to Thomas Nesbit a tract of land in De Soto county of that State, taking his notes for the purchase money, retaining a lien on the land for their payment. In the division of Henry Cook's estate these notes became the property of John H. Cook. On May 13, 1858, Norman and Cook, as administrators, for the use of John H. Cook, sued Thomas Nesbit and his sureties on his notes in De Soto county, and on December 18, 1858, recovered judgment for $5,532.70 and costs. No execution seems to have issued until August 7, 1868, but the execution was then levied on the land for the purchase of which the money was due, and the land was sold on the 6th of February, 1871, for $8,080, and bought by a third person. In the meantime, early in 1866, Thomas Nesbit had sold the land to his son James W. Nesbit, who had, however, only paid about $2,000 of the purchase money. He held under a deed with covenant of warranty, and his heirs were evicted by the purchaser at the execu-

Smith *v.* Owen.

tion sale, the said James W. Nesbit having died February 15, 1870.

On September 3, 1868, Thomas Nesbit filed his petition in bankruptcy, was declared a bankrupt during that month, and received a discharge February 11, 1869. On October 13, 1868, John W. Vance was appointed his assignee, and a formal assignment of his property and effects was made to him. Vance died in July, 1870, and E. Bouldin was appointed assignee in his place December 19, 1871.

Shortly after suing out execution on their judgment in De Soto county, Norman and Cook, as the judgment creditors, and John H. Cook as the person entitled to its proceeds, on December 24, 1868, filed their petition in the case of M. H. Owen, for himself and other creditors, against the executrix and devisee of John A. Noee, setting up a claim against the estate of the latter. They alleged that Noee was one of the attorneys for the collection of their debt against Thomas Nesbit and his sureties, and, as such attorney, had, on January 2, 1862, at Memphis, where he resided, collected from Thomas Nesbit $6,886.87 on said judgment in Confederate treasury notes; that he had no authority to receive payment in that form, and they repudiated the act; but they sought to hold him liable for failing to collect the judgment in good money, as it was his duty to do. Nothing seems to have been done in the enforcement of this claim.

On March 27, 1872, the present petition was filed by E. Bouldin, as assignee in bankruptcy of Thomas Nesbit and the personal representative and heirs of

Jas. W. Nesbit, stating the foregoing facts, and seeking to hold Noee's estate liable for the value of the Confederate money received by him in January, 1862, in satisfaction of the Norman and Cook judgment, from Thomas Nesbit. The petitioners also asked to be subrogated to the rights of Norman and the Cooks under their petition and claim of December 24, 1868. A demurrer was put in to this petition, which was sustained by the chancellor, and the petitioners appealed.

The object of the petition is to recover from the estate of Noee the value of the Confederate money paid in January, 1862, by Thomas Nesbit to Noee on the Norman and Cook judgment. The petition asserts that Bouldin, as assignee in bankruptcy of Thos. Nesbit, is entitled to the fund, and that the other petitioners are joined for better security. It is conceded by the petitioners' very learned and able counsel that Bouldin stands in the shoes of Thos. Nesbit, and has only his equity, rights and remedies. The ground of the action is that the money paid never became the money of the judgment creditors, they never having authorized the receipt of payment in Confederate treasury notes, and that it continued to be the money of Nesbit: *Kenny* v. *Hazeltine,* 6 Hum.; 62. Noee is treated as holding the money for the use of Nesbit, and liable accordingly. In this view, it is the ordinary case of a payment to a person as an agent, who had no authority to receive the payment, and the right of action arises as soon as the money is paid. It is an elementary principle of the

law of agency that the person who deals with him as such, if the agency be special, must at his peril look to the agent's authority: *Williams* v. *Storm*, 6 Cold., 203; *King* v. *Fleece*, 7 Heis., 273. The petition is based upon the idea that the attorney was not authorized to receive the payment in the form in which it was made, and that his principal had never ratified the act. The attorney became the agent of the person making the unauthorized payment, and the time to form the bar of the statute of limitations commenced running from the date of the reception of the funds: *Hawkins* v. *Walker*, 4 Yer., 188. The duty of active diligence to see that there was the prior authority or a subsequent ratification was on Nesbit. There is no question of repudiation of the act of the attorney by the creditor; for, the act was clearly unauthorized: *King* v. *Fleece*, 7 Heis., 273. And the petition does not pretend that the creditors had any knowledge of what took place between the debtor and the attorney. And the petitioners cannot even claim want of knowledge in time that the creditors intended to insist upon the want of authority and absence of ratification. For, the execution on the judgment was issued August 7, 1868, and was enjoined February 1, 1869, by a bill filed by Jas. W. Nesbit, to which Thomas Nesbit was a party, and in which the judgment creditors asserted their rights. And the statute only began to run on the 1st January, 1867.

The Mississippi administrator of James W. Nesbit, who is joined as a petitioner, has clearly no right of action in the courts of this State. Nor would an

administrator in this State, or the heirs of James W.
Nesbit have any rights in the premises, unless it be
by subrogation to the rights of Thomas Nesbit to the
extent of the payment of $2,000 made to him by
James W. on the purchase money of the land. To
this extent the heirs might recover on the warranty
in the deed to their father.

The present petitioners have no right of subroga-
tion to the petition of Norman and the Cooks, nor
would it do them any good if they had. That peti-
tion expressly repudiated the authority of Noee to
receive the Confederate money, and sought to hold
him liable for the loss occasioned by his neglect of
duty as an attorney in not collecting the judgment of
the petitioners against Nesbit. The petitioners have
since realized their debt out of the property of Nes-
bit, and having sustained no loss by the neglect of
Noee, even if he were guilty of neglect, could recover
nothing. The two claims are utterly antagonistic.

The chancellor's decree was undoubtedly correct,
and must be affirmed with costs.